Todd E. SAMUELSON, M.D. and Todd
E. Samuelson, M.D., P.A., Individually
and on Behalf of All Other Persons
Similarly Situated, Appellants,

v.

UNITED HEALTHCARE OF TEXAS,
INC. and United Healthcare Insur-
ance Company, Appellees.

No. 2–01–407–CV.

Court of Appeals of Texas,
Fort Worth.

June 13, 2002.

Bryan D. Bruner, Bruner, Jamieson & Pappas, L.L.P., Fort Worth, D. Douglas Brothers, Brothers & Thomas, L.L.P., Austin, William P. Maines, McDade, Fogler, Maines, L.L.P., Houston, for appellants.

Gary Crapster, P. Michael Jung, Christine D. Roseveare, Strasburger & Price, L.L.P., Dallas, David Seidler, Bourland, Kirkman, Seidler & Evans, Fort Worth, for appellees.

PANEL B: DAY, DAUPHINOT, and HOLMAN, JJ.

## OPINION

DIXON W. HOLMAN, Justice.

Appellants Todd E. Samuelson and his professional medical association have filed this interlocutory appeal to challenge the trial court's denial of a class certification for their lawsuit against Appellees United Healthcare of Texas, Inc. and United Healthcare Insurance Company. The suit seeks economic damages allegedly caused by Appellees' change of a reimbursement formula in its contract with approximately 4,500 physicians who are enrolled as its health care providers. The Texas Medical Association filed an *amicus curiae* brief

supporting class certification. Finding no error, we affirm.

## The Disputed Claim

Appellant Todd E. Samuelson is an otolaryngologist in Fort Worth, Texas who provides health care services for persons insured by Appellees. He and Appellees have signed a provider contract containing substantially the same language as contracts Appellees made with approximately 4,500 other physician health care providers. Appellees have contracts with between sixty-five and seventy provider associations in the Dallas/Fort Worth region and, during the relevant period, had at least four different types of contracts in the region. Appellants' original contract contains a compensation formula requiring Appellees to reimburse Appellants for the lesser of (a) their actual charge or (b) the maximum allowable fee contained in a fee schedule. Each original contract prohibited its modification or amendment except in a writing signed by the parties, although Appellees reserved the unilateral right to change the fee schedules. Appellees made a unilateral change, effective July 15, 1997, in a manner Appellants say is illegal. On that date, Appellees began paying Appellants "and other similarly situated providers" the lesser of (a) eighty percent of the provider's actual charge or (b) the revised fee schedule amount.

Appellants say that because this change in the contract understates the amount Appellees owe each provider, it is a breach of contract and the basis of Appellants' claim, both individually and on behalf of the class. Appellants intend to calculate their damages by determining the positive difference, if any, between the amount the class member was paid by the changed compensation formula, and the amount the class member would have been paid by the formula contained in the original contract before its unilateral amendment. Appellants asked the trial court to certify a class consisting of:

All UHC health care providers rendering services under one or more MetraHealth Provider Agreement(s) who were paid for services rendered under the MetraHealth Provider Agreement(s) after July 15, 1997, the lesser of: (a) 80% of the provider's actual charge for the services or (b) the amount indicated for the services in the applicable schedule of maximum allowable fees.

Excluded from the class are Jay Story, M.D., Steven Swaldi, M.D., Lynn M. Myers, M.D., Steven Gellman, M.D., Diana A. Coxsey, M.D., Gregory L. Colon, M.D. and Coppel Family Medical Center.

## Findings of Fact

By the time it denied class certification on December 13, 2001, the trial court had heard two days of evidence on that motion and made 101 findings of fact, none of which are challenged by Appellants.

 Unchallenged findings of fact are binding unless the contrary is established as a matter of law or there is no evidence to support the findings. *McGalliard v. Kuhlmann,* 722 S.W.2d 694, 696 (Tex. 1986). To determine a "no evidence" or "matter of law" issue, we must disregard all evidence contrary to the trial court's findings, then if any evidence remains to support the trial court's judgment, we must uphold its judgment. *Id.* at 696–97. Findings of fact entered in a case tried to the court have the same force and dignity as a jury's answers to jury questions. *Anderson v. City of Seven Points,* 806 S.W.2d 791, 794 (Tex.1991). The trial court's findings of fact are reviewable for legal and factual sufficiency of the evidence to support them by the same standards that are applied in reviewing evi-

dence supporting a jury's answer. *Ortiz v. Jones,* 917 S.W.2d 770, 772 (Tex.1996); *Catalina v. Blasdel,* 881 S.W.2d 295, 297 (Tex.1994).

## Conclusions of Law

■ There is no right to litigate a claim as a class action. *Southwestern Refining Co., Inc. v. Bernal,* 22 S.W.3d 425, 439 (Tex.2000). Appellants, however, suggest that their claim meets the requirements of Rule 42(a) and (b)(4) of civil procedure. TEX.R. CIV. P. 42(a), (b)(4). Conclusion of Law 1 states that "[i]n order to have their proposed class certified under Rule 42, [Appellants] are required to satisfy at least one of the elements under 42(b), in addition to all of the elements of 42(a). TEX.R. CIV. P. 42." Appellants do not challenge conclusion 1.

Instead, they contend that the trial court abused its discretion by reaching conclusion 2.a, that "[Appellants] fail to satisfy 42(b)(4) because questions of law and fact relating to [Appellees'] liability defenses and to damage calculations as to each individual class member predominate over any questions common to the class." Appellants argue that conclusion 2.a is not supported by the record and ignores the undisputed fact that Appellees' defenses are common to the class.

Rule 42(b)(4) requires the trial court to find that a class action is maintainable if the class is so numerous that joinder of all members is impracticable, there are questions of law or fact common to the class, the claims or defenses of the representative parties are typical of the class, the representative parties will fairly and adequately protect the class interests, and:

(4) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to

other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

TEX.R. CIV. P. 42(b)(4).

Moreover, Appellants insist that the trial court acted arbitrarily and unreasonably in reaching conclusion 2.b, that "[Appellants] also fail to show that the class action is a superior method as required under 42(b)(4) because there is a great interest of class members in controlling their own actions and difficulties in managing the proposed class action abound." Appellants assert there is no evidence to support conclusion 2.b.

Last, Appellants have challenged Conclusion of Law 3, that "[Appellants'] proposed trial plan is insufficient to establish the manageability of the proposed class action under 42(b)(4) as required under *Southwestern Refining Co., Inc. v. Bernal,* 22 S.W.3d 425, [435] (Tex.2000)." Appellants assert the trial court abused its discretion by refusing to sign the trial plan Appellants tendered, which they say complies with the supreme court's comment that a trial plan order should merely indicate how the claims likely will be tried, so conformance with the protective requirements of Rule 42 may be meaningfully evaluated. *Bernal,* 22 S.W.3d at 435.

■ Conclusions of law may not be challenged for factual sufficiency, but they may

be reviewed to determine their correctness based upon the facts. *Forbis v. Trinity Universal Ins. Co.,* 833 S.W.2d 316, 319 (Tex.App.-Fort Worth 1992, writ dism'd).

## Abuse of Discretion

■ Where an abuse of discretion standard of review applies to a trial court's ruling, findings of fact and conclusions of law, while helpful, are not required. *Crouch v. Tenneco, Inc.,* 853 S.W.2d 643, 649 & n. 3 (Tex.App.-Waco 1993, writ denied) (op. on reh'g). Here, Appellants ask us to consider that the trial court's denial of class certification was an abuse of discretion. To determine whether a trial court abused its discretion, we must decide whether it acted without reference to any guiding rules or principles; in other words, whether the act was arbitrary or unreasonable. *See Garcia v. Martinez,* 988 S.W.2d 219, 222 (Tex.1999); *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985), *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986).

■ Merely because a trial court may decide a matter within its discretion in a different manner than an appellate court would in a similar circumstance does not demonstrate that an abuse of discretion has occurred. *Downer,* 701 S.W.2d at 241–42. An abuse of discretion does not occur where the trial court bases its decisions on conflicting evidence. *Davis v. Huey,* 571 S.W.2d 859, 862 (Tex.1978); *see also Goode v. Shoukfeh,* 943 S.W.2d 441, 446 (Tex.1997). Furthermore, an abuse of discretion does not occur as long as some evidence of substantive and probative character exists to support the trial court's decision. *Holley v. Holley,* 864 S.W.2d 703, 706 (Tex.App.-Houston [1st Dist.] 1993, writ denied).

## Superiority, Common Issues, and Manageability

■ A class action becomes superior to other methods of litigation where any difficulties that may arise in managing the class are outweighed by the benefits of classwide resolution of common issues. *Peltier Enters., Inc. v. Hilton,* 51 S.W.3d 616, 624 (Tex.App.-Tyler 2000, pet. denied). Matters pertinent to a trial court finding that a class action is maintainable include the difficulties likely to be encountered in the suit's management. *Id.* at 621. Here, the trial court's findings of fact and conclusions of law are plain that at least the following non-common issues would predominate the trial:

1. What type of contract each class member operated under.

2. Whether each class member received a change notice.

3. Whether each class member rejected or accepted the notice.

4. Whether each class member appealed the change or its application to any submitted claims.

5. Whether each class member engaged in conduct inconsistent with any protest of the change.

6. Whether each class member engaged in conduct evidencing ratification of the change.

7. When the reimbursement change occurred for each member.

8. Whether each class member suffered any damage or benefit.

9. Whether each class member was overpaid and is subject to recoupment.

The trial court was entitled to take each of these factors into consideration in making its decision.

The trial court heard evidence that Appellees contracted with many physicians and their associations over the years, a list that has changed frequently. The trial

court was aware that no physician had joined Samuelson in this lawsuit nor intervened in it. Appellants concede in their brief, "no other class member expressed any interest in pursuing an individual claim." Moreover, Samuelson entered into three contracts with Appellee that were not identical and belonged to two associations that were treated differently under the twenty percent discount formula. He was part of one association called "ASIA" which orally agreed to the 1997 change, and later he signed a renewal contract that included the change. Still later, he switched exclusively to an association called "Cook's," to which the 1997 compensation change did not apply. After that, he joined "North Texas Ear, Nose & Throat," an association that signed a contractual amendment endorsing the 1997 compensation change. Only a detailed physician-by-physician, claim-by-claim analysis could accurately calculate damages, for there is no classwide, actuarial method of calculating damages because of the many different factors affecting each physician health care provider. In sum, the trial court heard evidence that calculating damages for the proposed class of 4,500 physician health care providers would be an overwhelming and unmanageable task for a jury.

█ Samuelson is a specialist and a relatively low-volume provider whose claim history is not representative of the majority of physicians in Appellees' network. In his oral deposition, Samuelson testified that he had relied on ASIA to negotiate his fees with Appellees and simply give him notice, did not know that ASIA had signed a contract with the twenty percent discount formula because he and ASIA had not discussed it, did not know whether he still is a member of ASIA, had never monitored his claim payments, lacked knowledge of his contingency fees, and had nev-

er considered whether other physicians might be audited and found to owe money to Appellees. Appellees audited Samuelson in 1997, after this suit was filed, and now contend he was overpaid by $4,800 during the relevant time period. Although he disputes that audited finding, he has not shown himself to be an adequate representative with a claim typical of the class he seeks to represent. *See* TEX.R. CIV. P. 42(a).

The trial court heard, but rejected, the testimony of Appellants' class action expert, Professor Charles Silver. From the testimony of Professor Linda Mullenix, Appellees' class action expert, the trial court found that she had made a thorough review of the facts and convincingly opined that the few common issues in this case would be overcome by the individual facts specific to each physician health care provider, and that those individual facts would take most of the court's time in the trial, so that the predominant requirement of Rule 42(b)(4) was not satisfied. Accordingly, the trial court agreed with Professor Mullenix's conclusion that all of the potential conflicts and differences among class members regarding the liability and damage issues cannot be cured by simply suggesting that those who do not wish to participate in the litigation may opt out. Finally, the trial court agreed with Professor Mullenix's conclusion that issues of waiver, estoppel, or ratification cannot be tried on a classwide basis and must be tried on a fact-specific basis, physician by physician.

From the evidence, the trial court found that a class action jury would have to marshal complex evidence applicable to thousands of physician health care providers and their medical associations, including many individual physicians who moved between the associations during the relevant time; that it would require an unrea-

sonable amount of time and expense to assemble the information needed to determine the liability and damage issues for thousands of physicians; and that because of mergers with different health care companies in the Dallas/Fort Worth region, Appellees would have to search computer systems with different databases to obtain information on how physicians have been paid for the last four years.

Appellees' expert witness, Dr. Steven Wiggins, professor of economics at Texas A & M University, testified that the damages alleged by Appellants cannot be calculated on a classwide basis from computer information, and the trial court found that no aggregate, actuarial, modeling, or averaging method of calculating damages is available. Dr. Wiggins' unrefuted testimony is that damages, if any, must be determined by traditional causation principles for each physician.

Moreover, the trial court found that Appellants' proposed trial plan does not sufficiently identify the substantive issues of all plaintiffs and defendants that will control the trial's outcome, nor does the proposed plan sufficiently address how to handle the evidence and mechanics of the trial of liability and damages issues that relate to specific physician health care providers and medical associations. A trial court's findings of fact may be overturned only if they are so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *Ortiz*, 917 S.W.2d at 772. Our careful review of all of the evidence in the record of this case persuades us that the trial court's findings are not clearly wrong or unjust.

## Conclusion

Because there is evidence in the record to support the trial court's unchallenged findings, we must give them the same force and dignity as a jury's answers to jury questions. Based upon the findings, each of the conclusions of law are correct, and the trial court did not abuse its discretion in reaching its findings or conclusions. Accordingly, we overrule each of Appellants' issues and affirm the trial court's denial of class certification.