COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-07-184-CV

 

 

IN THE INTEREST OF J.P.C., A CHILD                                                     

 

                                              ------------

 

           FROM THE 324TH
DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

 

I. Introduction

In one issue, Appellant Dayna Kay C. argues that
the trial court abused its discretion when it granted Appellees Richard and
Maurine C.=s petition for grandparent
access.  We reverse and render. 

II. Factual and Procedural History








Dayna and Robert C. were married May 20,
1996.  They had one child, J.P.C., who
was born March 29, 1999.  Dayna filed for
divorce from Robert in May 2002.  After
the divorce was filed, Robert went to live with his parents, Richard and
Maurine C. (Athe grandparents@).  Subsequently, the trial court entered
temporary orders awarding Dayna primary managing conservatorship and awarding
Robert standard possession subject to the grandparents=
supervision. 

In March or April 2003, the divorce proceedings
were halted when Robert was diagnosed with a terminal disease.  Robert died on May 9, 2004.  J.P.C. was five years old at the time.  On May 18, 2004, the grandparents filed an
original petition for grandparent access. 
On January 31, 2007, the trial court issued a rendition letter granting
the grandparents possession of and access to J.P.C.  On May 18, 2007, the trial court signed its
order granting the grandparents possession and access.  J.P.C. was eight years old at that time.  Dayna brought this appeal.

III. Standard of Review













Before we determine the merits of Dayna=s
appeal, we must first decide what standard of review applies to a trial court=s
determination of grandparent access and possession under section 153.433 of the
Texas Family Code.[1]
 Tex. Fam. Code Ann. ' 153.433
(Vernon Supp. 2008).  Although section
153.433 does not specifically include a best interest analysis, section 153.002
dictates that the best interest of the child shall always be the primary
consideration of the court in determining the issues of conservatorship and
possession of and access to the child.  Id.  The determination of a minor=s best
interest requires the court to balance the possible benefits and detriments to
the minor in granting grandparent access and possession.[2]  This type of balancing necessarily involves
the exercise of judicial discretion and should be reviewed on that basis. See
In re Doe 2, 19 S.W.3d at 281.  Moreover, this type of review is used in many
other family law contexts; for instance, in child support, adoption, and
custody cases the trial court=s best
interest finding is reviewed for an abuse of discretion.[3]  Id.  Because of the discretionary nature of the
trial court=s determination and the
similarity to review of best interest findings in other family law contexts, we
hold that abuse of discretion is the proper standard of review for a trial court=s
determination regarding grandparent access and possession.  

To determine whether a trial court abused its
discretion, we must decide whether the trial court acted without reference to
any guiding rules or principles; in other words, we must decide whether the act
was arbitrary or unreasonable.  Downer
v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985), cert.
denied, 476 U.S. 1159 (1986).  Merely
because a trial court may decide a matter within its discretion in a different
manner than an appellate court would in a similar circumstance does not
demonstrate that an abuse of discretion has occurred.  Id. 
An abuse of discretion does not occur where the trial court bases its
decisions on conflicting evidence.  In
re Barber, 982 S.W.2d 364, 366 (Tex. 1998) (orig. proceeding).  Furthermore, an abuse of discretion does not
occur as long as some evidence of substantive and probative character exists to
support the trial court=s decision.  Butnaru v. Ford Motor Co., 84 S.W.3d
198, 211 (Tex. 2002).  A trial court has
no discretion in determining what the law is or applying the law to the facts,
even when the law is unsettled.  In re
Prudential Ins. Co. of Am., 148 S.W.3d 124, 135 (Tex. 2004). 








In Dayna=s sole
issue on appeal, she argues that the trial court abused its discretion when it
granted the grandparents access to J.P.C. because the evidence was both legally
and factually insufficient to support that decision.  In appropriate cases, legal and factual
sufficiency are relevant factors in assessing whether the trial court abused
its discretion.  Beaumont Bank, N.A.
v. Buller, 806 S.W.2d 223, 226 (Tex. 1991); Tex. Dep=t of
Health v. Buckner, 950 S.W.2d 216, 218 (Tex. App.CFort
Worth 1997, no writ).  Furthermore, when
an abuse of discretion standard of review applies to a trial court=s
ruling, findings of fact and conclusions of law aid us in reviewing the
propriety of the ruling by providing us with an explanation for the
ruling.  Chrysler Corp. v. Blackmon,
841 S.W.2d 844, 852 (Tex. 1992); Samuelson v. United Healthcare of Tex.,
Inc., 79 S.W.3d 706, 710 (Tex. App.CFort
Worth 2002, no pet.). 

 

 

 

 

 

 

 

 

 

 








 

IV. Grandparents Access

A. Applicable Law








Section 153.433 of the Texas Family Code sets
forth the requirements that must be met before a court may order grandparent
access to a grandchild.[4]  See Tex.
Fam. Code Ann. ' 153.433.  The statute presumes that a parent acts in
the child=s best interest, and it permits
a grandparent to obtain court‑ordered access only upon a showing that
denial of access will Asignificantly impair the child=s
physical health or emotional well‑being.@  In re Derzapf, 219 S.W.3d 327, 333
(Tex. 2007) (orig. proceeding). 

The Legislature has set a high threshold for a
grandparent to overcome the presumption that a parent acts in his or her child=s best
interest: the grandparent must prove that denial of access would Asignificantly impair@ the
child=s
physical health or emotional well-being.  Tex.
Fam. Code Ann. ' 153.433(2) (emphasis
added); see Derzapf, 219 S.W.3d at 334. 
This high threshold exists so that a court will refrain from interfering
with child-rearing decisions made by a parent simply because the court believes
that a Abetter
decision@ could have
been made.  See Derzapf, 219
S.W.3d at 334 (quoting Troxel v. Granville, 530 U.S. 57, 73, 120 S. Ct.
2054, 2064 (2000)). 

B. Overcoming the Statutory Presumption 

We must now determine whether the grandparents in
this case presented sufficient evidence to overcome the presumption enunciated
in section 153.433.  To succeed on their
claim, the grandparents had to prove by a preponderance of the evidence that
the denial of access would Asignificantly
impair@ J.P.C.=s
physical health or emotional well-being. 
See Derzapf, 219 S.W.3d at 334. 








In an effort to demonstrate that the denial of
access would significantly impair J.P.C., the grandparents urge us to consider
their significant and lengthy past contact with J.P.C. that occurred in their
home while they cared for Robert during the divorce proceedings.  They argue that since their access to J.P.C.
had been limited and restricted after Robert=s death,
J.P.C.=s
behavior was Adifferent@ than it
had been when they were able to see each other regularlyCthat
J.P.C. was Alonging.@  Maurine testified that when they were able to
have a supervised visit at the park A[J.P.C.]
would take me off andCjust take me by the hand and
want to go off and, you know, sit under the slide and just sit there and just
be there.  She just wanted to be with me.@  Richard testified that Dayna=s
supervision of their visits with J.P.C. Acaused
[J.P.C.] discomfort@ and that J.P.C. acted
differently, appearing inhibited, pensive, and superficial when Dayna was
present. 








The grandparents also argue that a clear
visitation schedule was good for J.P.C. because it was not in J.P.C.=s best
interest to have the constant pulling back and forth between themselves and
Dayna as they tried to organize visitations. 
They express their fear that without a court order it would become
almost impossible to establish regular visits, and as a result, J.P.C.=s memory
of her father would dwindle and her father=s side
of the family would not be able to be a part of her life.  They argue that their fear was evidenced by
the fact that J.P.C. threw pictures of her father into the trash.  The grandparents also point to a letter that
Dayna wrote to J.P.C.=s kindergarten teacher in which
Dayna described Robert=s illness and his Aabnormal
behaviors and verbal abusiveness@ as an
example of how Dayna was, according to the grandparents, Amaking
every effort to control [J.P.C.=s]
memor[y] of her father.@ 

We have closely reviewed the record in this case
for evidence that denial of access would significantly impair J.P.C.=s
physical health or emotional well-being, and we are unpersuaded by the
grandparents= arguments.  Our review of the record shows that the grandparents
have not presented any probative evidence to show that J.P.C.=s
physical or emotional health would be significantly impaired by the denial of
access.  See Butnaru, 84 S.W.3d at
211.  Instead, the grandparents have
offered only bare, unsupported allegations that the denial of access would
significantly impair J.P.C.  








For instance, although they argue that limited
and restricted access to J.P.C. was, in their opinion, causing her distress and
causing her to act Adifferent, inhibited, pensive,
and superficial,@ the only evidence they offer to
show that J.P.C. was distressed was Maurine=s
testimony regarding her  interaction with
J.P.C. at the park.  However, they do not
explain how J.P.C.=s alleged Adiscomfort@ amounts
to significant impairment, nor do they offer any evidence connecting J.P.C.=s Adifferent,
inhibited, pensive, and superficial@
behavior to the visitation schedule or Dayna=s
supervision of their visits. Instead, the Aevidence@ they
raise is merely their own characterization of J.P.C.=s
behavior, and their conclusion that such behavior was the result of the limited
and restricted access. 








Further, while the grandparents argue that
without regular, court-ordered visits, J.P.C. would be significantly impaired
because her memory of her father would dwindle, the grandparents have not
presented any probative evidence to support their belief.  For instance, although the grandparents rely
on the fact that J.P.C. threw pictures of her father into the trash as evidence
that J.P.C.=s memory of her father was
dwindling, the record clearly shows that this event occurred during Dayna and
Robert=s
divorce proceedings, while J.P.C. was regularly visiting their house during
Robert=s
periods of visitation, and not subsequent to Robert=s
death.  Thus, the grandparents=
reliance on this piece of evidence is misplaced.  Similarly, the grandparents=
characterization of Dayna=s letter to J.P.C.=s
kindergarten teacher as evidence that Dayna was attempting to Acontrol
[J.P.C.=s]
memor[y] of her father@ is also unfounded.  Rather, the record shows that the letter was
Dayna=s
attempt to ease J.P.C.=s transition after the loss of
her father by informing her teacher of the difficulties that J.P.C. had faced
and issues that may arise as a result. 
Indeed, J.P.C.=s teacher testified that the
letter Dayna gave her Awas extremely helpful@ in
letting her know what she might be dealing with in regards to J.P.C.  Moreover, the grandparents have not presented
any evidence showing that J.P.C. has been unable to remember her father.  In contrast, the record shows that after
Robert=s death,
J.P.C. had pictures of him in her room and that Ashe
[would] have them up for a while. . . 
and then she [would] take them down.@[5]  








Furthermore, the grandparents=
position that the denial of court-ordered visitation would significantly impair
J.P.C. is based completely on their expressed feeling that it was not in J.P.C.=s best
interest to have the constant pulling back and forth between themselves and
Dayna, and their fear that without the court order it would become impossible
to establish regular visits.  However,
there is no evidence that the schedule that existed before litigation, although
not as frequent as the grandparents would have liked, was harming J.P.C.;
again, this is just Maurine and Richard=s
opinion that regular, unsupervised visits would be better.  With no other evidence to demonstrate how
J.P.C. would be significantly impaired, these arguments, in and of themselves,
are only reflections of the grandparents= fears
and speculations and do not support the trial court=s
finding that the grandparents overcame the statutory presumption.  








Significantly, the only testimony presented by
the grandparents on the issue of whether J.P.C. was significantly impaired by
the denial of access was their own testimony and the testimony of Karen, J.P.C.=s
paternal aunt, who testified that if the grandparents were not given access,
J.P.C. would have a lot of questions as to why. 
But Aquestions@ are not
evidence of significant impairment.  Once
again, other than their own opinions and that of an interested, nonexpert
witness, the grandparents produced no evidence that J.P.C. would be
significantly impaired in the absence of court-ordered access.        In contrast, Dayna presented evidence
demonstrating that J.P.C. was not significantly impaired by the denial of
access.  While the grandparents allege
that the limited and restricted visits were causing J.P.C. distress, Dayna
points out that both the grandfather and the paternal aunt actually testified
that J.P.C. was a happy little girl. 
Similarly, J.P.C.=s kindergarten teacher testified
that J.P.C. was a loving, sweet child who was very social and interactive with
others.  Moreover, Dayna points out that
although the grandparents claim that the denial of visitation would
significantly impair J.P.C., they actually made no effort to contact Dayna to
set up a visitation schedule after Robert=s death;
instead, they immediately filed a petition for grandparent access.  Lastly, 
Dayna argues that the imposition of visitation would serve only to make
J.P.C. live under the constraint of a court order, an action that was
unnecessary because Dayna was already offering the grandparents supervised
visits with J.P.C. 








After reviewing the record, we determine that the
evidence produced by the grandparents, largely consisting of their own feelings
and speculations, did not rise to the level of proving by a preponderance of
the evidence that denial of access would significantly impair the physical
health or emotional well-being of J.P.C.  The mere opinion of the grandparents
themselves and an interested, nonexpert witness that the grandparents should be
granted access does not overcome the statutory presumption, nor does it support
the court=s interference with Dayna=s
parental rights by awarding the grandparents court-ordered access to
J.P.C.  Thus, the grandparents have
failed to show that the denial of access would significantly impair J.P.C.=s
physical or emotional well-being. 
Because a trial court has no discretion in applying the law to the
facts, the trial court=s determination that the
statutory presumption was overcome was an abuse of discretion.  See In re Prudential Ins. Co. of Am.,
148 S.W.3d at 135. 

V. 
Conclusion

Having determined that the grandparents failed to
overcome the statutory presumption by proving by a preponderance of the
evidence that the denial of access would significantly impair J.P.C.=s
physical health or emotional well-being, we hold that the trial court abused
its discretion in awarding the grandparents access to J.P.C.  Accordingly, we reverse the trial court=s order
and render judgment denying the grandparents=
petition for access. 

 

 

 

BOB
MCCOY

JUSTICE

 

PANEL B:   LIVINGSTON, WALKER, and MCCOY, JJ.

WALKER, J. concurs without opinion.








DELIVERED: July 17, 2008    











[1]While both parties assert
that the trial court=s determination of
grandparent access and possession is reviewed under an abuse of discretion
standard, they do not cite, nor have we found, any authority specifically applying
an abuse of discretion review to section 153.433 appeals.  Therefore, we address the issue as a
threshold matter here. 





[2]Cf. In re Doe 2, 19 S.W.3d 278, 281 (Tex.
2000) (observing that, in evaluating a minor=s request for waiver of parental notification to
obtain an abortion, the trial court=s determination of the minor=s best interests require
that the trial court balance the possible benefits and detriments to the minor
in notifying her parents). 





[3]See, e.g., Worford v. Stamper,
801 S.W.2d 108, 109 (Tex. 1990); In re W.E.R., 669 S.W.2d 716, 716 (Tex.
1984); Gillespie v. Gillespie, 644 S.W.2d 449, 451 (Tex. 1982).





[4]The court shall order
reasonable possession of or access to a grandchild by a grandparent if:

 

. . . . 

 

(2) the grandparent
requesting possession of or access to the child overcomes the presumption that
a parent acts in the best interest of the parent=s child by proving by a
preponderance of the evidence that denial of possession of or access to the
child would significantly impair the child=s physical health or emotional well‑being;
and

 

(3) the grandparent
requesting possession of or access to the child is a parent of a parent of the
child and that parent of the child:

 

(A) has been incarcerated
in jail or prison during the three‑month period preceding the filing of
the petition;

(B) has been found by a
court to be incompetent;

(C) is dead; or

(D) does not have actual
or court‑ordered possession of or access to the child.

 

Tex. Fam. Code Ann. ' 153.433(2)B(3).





[5]The testimony regarding
J.P.C.=s interaction with her
father=s pictures after his
death was confusing, at best. 

 

Q: Can you tell the Court
whether or not there are any photos of your deceased husband in your home?

 

A: Yes, there are. 

 

Q: Are there any in your
daughter=s room?

 

A: Yes, there are. 

 

Q: And what has she done
with the photos in her room of her dad?

 

A: She would do different
things at different times.  During the
divorce proceedings. . . . The photographs that had been in my room, she had
put them away.  Fortunately, fished some
of them out of the trash can and take them and hide those. 

 

Q: Since [Robert=s] death, has there been
any activity of your daughter with her dad=s pictures?

 

A: Yes. There=s still activity to where
she=ll have them up for a
while.  Then she=ll take them down.