

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-16-00070-CV

HENRY F. COFFEEN III                                                          APPELLANT
MANAGEMENT, INC., D/B/A
COFFEEN MANAGEMENT
COMPANY

V.

THOMAS MUSGRAVE IV,                                                        APPELLEES
CHRISTINA MORGAN, AND
RICHARD W. DEWESE

----------

## FROM THE 96TH DISTRICT COURT OF TARRANT COUNTY
## TRIAL COURT NO. 096-283020-15

----------

## MEMORANDUM OPINION[1]

----------

Appellant Henry F. Coffeen III Management, Inc., d/b/a Coffeen

Management Company (CMC) appeals from the trial court's order denying its

---

[1]*See* Tex. R. App. P. 47.4.

application for a temporary injunction against Appellee Thomas Musgrave IV.[2] *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(4) (West Supp. 2016) (authorizing an interlocutory appeal from an order denying a request for a temporary injunction). We affirm.

## Background

CMC is a licensed insurance agency that sells insurance products, such as extended warranty policies and GAP insurance, to banks, credit unions, and auto, boat, and recreational vehicle dealerships. CMC also provides dealerships with training on how to sell more vehicles and more insurance products. Musgrave joined CMC in January 2011 as an independent contractor and was given the title of president. Musgrave's duties included managing day-to-day operations, meeting clients, hiring and firing personnel, supervising and managing sales representatives, and assisting CMC in enforcing noncompete, antisolicitation, and confidentiality agreements signed by CMC's personnel.

Musgrave received confidential and proprietary information such as product information; pricing and cost information; information regarding profits, markets, and sales; customer lists; financial data; and plans and strategies for further business development. In December 2012, at CMC's request, Musgrave signed a "Non-Compete Agreement" in which he agreed not to disclose CMC's confidential information without CMC's written consent. The agreement also

---

[2]Christina Morgan and Richard W. Dewese are also listed as Appellees in the case style, but they are not parties to this appeal.

2

contains noncompete and antisolicitation provisions that CMC claims prohibit Musgrave from competing with CMC or soliciting CMC's clients or customers for two years following the termination of Musgrave's employment with CMC.

In August 2015, Musgrave began making trips to New Mexico to visit a CMC client, Tate Branch Automotive (TBA), which owns three automobile dealerships there. Initially, Musgrave's trips to New Mexico were to ensure that CMC's TBA account was properly serviced. Shortly thereafter, Musgrave also began working with TBA's owner, Tate Branch, on the acquisition of additional automobile dealerships in New Mexico. Advising customers on dealership acquisitions is not a part of CMC's business, and neither Branch nor TBA paid CMC for the acquisition assistance Musgrave provided. CMC permitted Musgrave to work with Branch because if Branch acquired additional dealerships, CMC might gain them as customers.

Musgrave resigned from his role as independent contractor and president of CMC on December 17, 2015. Musgrave continued to advise Branch and TBA on the acquisition of dealerships and also began offering advice on fixed operations, i.e. parts and service, at TBA's existing dealerships. Musgrave and Branch had general discussions about Branch employing Musgrave for continued work on the acquisitions and to oversee the operations at TBA's automobile dealerships.

CMC sued Musgrave for breach of contract, violations of the Texas Uniform Trade Secrets Act, misappropriation of confidential information and trade

3

secrets, tortious interference for existing and prospective business relations, civil conspiracy, violations of the Texas Theft Liability Act, and business disparagement. CMC also sought a temporary restraining order, temporary and permanent injunctions, and attorney's fees. The trial court granted CMC a temporary restraining order prohibiting Musgrave from directly or indirectly calling upon, meeting with, communicating with, or soliciting for the purpose of selling or marketing any products or services that comprise any part of CMC's business to specified CMC clients, including the three Tate Branch dealerships; using or disclosing CMC's confidential information and trade secrets; and altering, deleting, destroying, hiding, and secreting any document, record, disc, or other written or electronic media containing or describing CMC's confidential information and trade secrets.

The trial court then held a hearing on CMC's application for temporary injunction. After the hearing, the trial court found (1) the Non-Compete Agreement was not supported by consideration; (2) there were no geographical boundaries in the Non-Compete Agreement; (3) Musgrave had not caused any current irreparable harm to CMC; (4) any future irreparable harm to CMC caused by Musgrave's activities was speculative; and (5) there was no collateral agreement in connection with restrictions sought to be enforced under the Non-Compete Agreement. The trial court therefore denied CMC's application.

CMC has appealed. In three issues, CMC argues the trial court abused its discretion by denying its application for temporary injunction because (1) the

4

Non-Compete Agreement was supported by consideration, (2) the lack of geographic restriction did not render the Non-Compete Agreement unenforceable, and alternatively, the trial court should have reformed the agreement to apply to the clients with whom Musgrave is familiar, and (3) CMC established a likelihood of success on the merits of its claims and that Musgrave's conduct threatened to cause CMC imminent and irreparable injury.

## Standard of Review

The purpose of a temporary injunction is to preserve the status quo of the litigation's subject matter pending a trial on the merits. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002) (citing *Walling v. Metcalfe*, 863 S.W.2d 56, 57 (Tex. 1993)). Whether to grant or deny a temporary injunction is within the trial court's sound discretion. *Id.*

A temporary injunction is an extraordinary remedy and will not issue as a matter of right. *Id.* To obtain a temporary injunction, an applicant must plead and prove (1) a cause of action against the defendant, (2) a probable right to the relief sought, and (3) a probable, imminent, and irreparable injury in the interim. *Id.* A probable right of recovery is shown by alleging a cause of action and presenting evidence tending to sustain it. *Frequent Flyer Depot, Inc. v. Am. Airlines, Inc.*, 281 S.W.3d 215, 220 (Tex. App.—Fort Worth 2009, pet. denied), *cert. denied*, 559 U.S. 1036 (2010). An injury is irreparable if damages would not adequately compensate the injured party or if they cannot be measured by any

5

certain pecuniary standard. *Butnaru*, 84 S.W.3d at 204; *Frequent Flyer Depot*, 281 S.W.3d at 220.

Whether to grant or deny a request for a temporary injunction is within the trial court's discretion, and we will not reverse its decision absent a clear abuse of discretion. *Butnaru*, 84 S.W.3d at 204. When, as here, no findings of fact or conclusions of law are filed,[3] the trial court's determination of whether to grant or deny a temporary injunction must be upheld on any legal theory supported by the record. *LasikPlus of Tex., P.C. v. Mattioli*, 418 S.W.3d 210, 216 (Tex. App.— Houston [14th Dist.] 2013, no pet.). We review the evidence submitted to the trial court in the light most favorable to the court's ruling, draw all legitimate inferences from the evidence, and defer to the trial court's resolution of conflicting evidence. *See IAC, Ltd. v. Bell Helicopter Textron, Inc.*, 160 S.W.3d 191, 196 (Tex. App.—Fort Worth 2005, no pet.). A reviewing court will not reverse an order on a temporary injunction unless the trial court's action was so arbitrary that it exceeded the bounds of reasonable discretion. *EMSL Analytical, Inc. v. Younker*, 154 S.W.3d 693, 696 (Tex. App.—Houston [14th Dist.] 2004, no pet.).

---

[3]The trial court's stated reasons for denying CMC's application for temporary injunction do not meet the requirements of civil procedure rule 299a and do not control the outcome of this case. *See* Tex. R. Civ. P. 299a (requiring findings of fact to be separately filed and not simply recited in the judgment); *Tom James of Dallas, Inc. v. Cobb*, 109 S.W.3d 877, 884 (Tex. App.—Dallas 2003, no pet.); *see also Samuelson v. United Healthcare of Tex., Inc.*, 79 S.W.3d 706, 710 (Tex. App.—Fort Worth 2002, no pet.) ("Where an abuse of discretion standard of review applies to a trial court's ruling, findings of fact and conclusions of law, while helpful, are not required.") (citing *Crouch v. Tenneco, Inc.*, 853 S.W.2d 643, 649 & n.3 (Tex. App.—Waco 1993, writ denied) (op. on reh'g)).

The trial court does not abuse its discretion when basing its decision concerning a temporary injunction on conflicting evidence, nor does it abuse its discretion when some evidence of substantive and probative character exists to support its decision. *Wright v. Sport Supply Grp., Inc.*, 137 S.W.3d 289, 292 (Tex. App.—Beaumont 2004, no pet.).

### Discussion

To have obtained a temporary injunction, CMC was required to prove that it had a probable right to recovery on its causes of action against Musgrave. *See Frequent Flyer Depot*, 281 S.W.3d at 220. CMC could have proven a probable right to recovery by alleging the existence of a right and presenting evidence tending to show that right was being denied. *See Anesthesiology Assocs., P.A. v. Tex. Anesthesia Grp., P.A.*, 190 S.W.3d 891, 897 (Tex. App.—Dallas 2006, no pet.). The cause of action relevant to CMC's request for a temporary injunction is CMC's breach of contract claim against Musgrave, which is based upon the noncompete and antisolicitation provisions in the Non-Compete Agreement.

An appeal from an order denying a temporary injunction based on noncompete clauses does not present for appellate review the ultimate question of whether the noncompete agreement is enforceable under section 15.50 of the business and commerce code. *LasikPlus of Tex.*, 418 S.W.3d at 216; *Tom James of Dallas*, 109 S.W.3d at 882–83; *see* Tex. Bus. & Com. Code Ann. § 15.50(a) (West 2011) (stating that a covenant not to compete is enforceable if it (1) is ancillary to or part of an otherwise enforceable agreement and (2) contains

7

reasonable limitations as to time, geographic area, and scope of activity that do not impose a greater restraint than is necessary). "We therefore look at the enforceability of the noncompete, but only to the extent necessary to determine whether the requirements for a temporary injunction have been met." *Tranter, Inc. v. Liss*, No. 02-13-00167-CV, 2014 WL 1257278, at *3 (Tex. App.—Fort Worth Mar. 27, 2014, no pet.) (mem. op.). In this case, however, it is unnecessary for us to evaluate the enforceability of the Non-Compete Agreement under section 15.50 because, as pointed out by Musgrave, the noncompete and antisolicitation provisions do not restrict Musgrave's post-termination activities.

The noncompete and antisolicitation provisions at issue in this case are as follows:

(b) <u>Competitive Activities - Voluntary Termination, Termination with Cause</u>. ***During the Term**[4] **of this Agreement and for a period of two (2) years after the "CMC Account Development Sub Agent Agreement" is terminated*, regardless of cause, Representative[5] shall not, directly or indirectly (whether for compensation or otherwise), alone or as an officer, director, shareholder (excepting not more than five percent (5%) stockholdings for investment purposes in securities of publicly-held and traded companies), partner, associate, creditor, employee, agent, principal, trustee, beneficiary of a trust, salesman, consultant, co-venturer, owner, representative, advisor or in any other capacity whatsoever, **take any action in or participate with or become interested in or associated with** any person, firm, partnership, corporation or other entity whatsoever that is engaged, or plans to engage in any manner

---

[4]Despite being capitalized, the "Term" of the Non-Compete Agreement is not defined.

[5]The agreement identified Musgrave as the Representative and CMC as the Corporation.

8

in the business of the solicitation, negotiation, sale, installation and servicing of automobile warranties, finance reserve products, aftermarket, computer training products, credit life insurance and management consulting with automobile dealers, banks, credit unions, and/or affiliated or associated companies **at any time during the Term** (or which is in development to be manufactured and/or marketed by the Corporation or any affiliate upon termination of this Agreement) or any other related business in which the Corporation and its subsidiaries and affiliates may engage during the Term of this Agreement, in any market served, in any state, either currently or at any time during the Term, by the Corporation and/or any of such subsidiaries and affiliates.

. . . .

(c) <u>Antisolicitation</u>.  Representative agrees that **during the Term of the CMC Account Development Sub Agent Agreement, and for a period of two (2) years after termination of the Agreement**, he will not influence or attempt to influence clients/customers of the Corporation (regardless of geographic region) or any of its present or future subsidiaries or affiliates, either directly or indirectly, to divert their business to any other individual, partnership, firm, corporation or other entity.  [Emphasis added.]

CMC claims that the restrictions in these two provisions continue for two years following the termination of Musgrave's employment with CMC.  However, both provisions state that the restrictions expire two years after the termination of the "CMC Account Development Sub Agent Agreement."  Both Henry Coffeen, the owner of CMC, and Musgrave testified at the temporary injunction hearing that Musgrave was not a subagent for CMC and that he did not have a "CMC Account Development Sub Agent Agreement" with CMC.[6]  Thus, the noncompete

---

[6]A subagent is a sales representative, and the "CMC Account Development Sub Agent Agreement" is an agreement CMC enters into with its sales representatives.

9

and antisolicitation provisions do not restrict Musgrave's post-termination activities, and CMC therefore did not show a probable right to recovery on its claim that Musgrave breached the Non-Compete Agreement. We therefore conclude and hold that the trial court did not abuse its discretion by denying CMC's application for temporary injunction. *See Rimes v. Club Corp. of Am.*, 542 S.W.2d 909, 912 (Tex. Civ. App.—Dallas 1976, writ ref'd n.r.e.) (stating that a court cannot "extend the period provided in a restrictive covenant contained in an employment contract" and holding that the trial court abused its discretion by temporarily enjoining former employees because former employer could not show a probable right of recovery when the two-year restrictive covenant had expired); *cf. Weatherford Oil Tool Co. v. Campbell*, 340 S.W.2d 950, 952 (Tex. 1960) (indicating that the issue of reformation of a noncompetition covenant becomes moot after the term of the covenant has expired); *Leon's Fine Foods, Inc. v. McClearin*, No. 05-97-01198-CV, 2000 WL 277135, at *1 (Tex. App.—Dallas Mar. 15, 2000, pet. denied) (not designated for publication) ("Once the non-competition period ends, the trial court's ability to enforce the covenant by injunction becomes moot.").

Accordingly, we overrule the portion of CMC's third issue in which it asserts that it established a likelihood of success on the merits of its claim.

### Conclusion

Because we have determined that the trial court could have denied CMC's application for temporary injunction because it did not show a probable right to

10

recovery, we need not address the remainder of CMC's issues.  *See* Tex. R. App. P. 47.1.  Accordingly, we affirm the trial court's order denying CMC's application for temporary injunction.

/s/ Anne Gardner
ANNE GARDNER
JUSTICE

PANEL:  LIVINGSTON, C.J.; DAUPHINOT and GARDNER, JJ.

DELIVERED:  October 27, 2016

11