248 S.W.3d 753 (2008)
In the Interest of M.J.G. and J.M.J.G., Children.
No. 2-07-105-CV.
Court of Appeals of Texas, Fort Worth.
February 7, 2008.
*756 Tracey L. Jennings, Bowie, TX, for Appellant.
Stephans & Myers, L.L.P., and Christopher D. Baran, Graham, TX, for Appellee.
Panel F: LIVINGSTON, DAUPHINOT, and McCOY, JJ.

OPINION
BOB McCOY, Justice.
Appellants Carlos and Sonja Riviers appeal the trial court's denial of their petition in intervention in their daughter and son-in-law's divorce proceedings, in which the Rivierses sought custody of their grandchildren. Because the Rivierses did not show that they had standing to intervene in the custody proceedings, we affirm.
The Rivierses' daughter, Ricci, married Jacob Reuben G. in 2002. Ricci and Jacob had two children: a daughter, M.J.G., and a son, J.M.J.G. The couple subsequently separated, and Ricci filed for divorce on June 5, 2006. The trial court entered temporary orders appointing Ricci and Jacob temporary joint managing conservators, with Ricci having the exclusive right to designate the children's primary residence. The trial court also entered a possession order granting Jacob visitation with the children every other weekend.
The Rivierses filed a petition in intervention in the divorce proceedings on October 6, 2006, requesting the trial court to appoint them sole managing conservators of the children or, alternatively, joint managing conservators with the right to establish the children's residence. The Rivierses also requested a temporary order naming them temporary sole managing conservators of the children or joint managing conservators with the right to establish the children's residence.
The trial court heard the Rivierses' request for temporary orders on November 3, 2006. All parties were present at the hearing, but only the Rivierses were represented by counsel.[1] After hearing testimony from Sonja Riviers and Ricci, the trial court judge stated that he would hold the next hearing on the Rivierses' petition in ten days and that, in the interim, he would order a social study at the Rivierses' expense and enter a temporary order "naming [the Rivierses] as the rightwith the right to establish the domicile until the next hearing. . . . [W]hat I'm doing basically is, after the hearing giving [Ricci and Jacob] an opportunity to get counsel."
The trial court held the next hearing on the Rivierses' petition as scheduled on November 13, 2006. Jacob was present and represented by counsel, as were the Rivierses; Ricci also was present but was not represented by counsel. Sonja, Jacob, and Ricci all testified. At the conclusion of the hearing, the trial court orally denied the Rivierses' petition in intervention, stating, "The law in this area is very specific, and I don't feel that the burden of proof has been met." Ricci and Jacob were divorced on December 27, 2006; the trial court named both parents as joint managing conservators in the divorce decree, but this *757 time it named Jacob as the parent with the exclusive right to designate the children's primary residence. The trial court subsequently entered findings of fact and conclusions of law requested by the Rivierses after their petition in intervention was orally denied; the Rivierses then filed a motion for new trial, which was overruled by operation of law. The Rivierses now appeal.
A. The Rivierses' Standing to Intervene
Generally, an intervenor must show standing to maintain an original suit in order to intervene. Whitworth v. Whitworth, 222 S.W.3d 616, 621 (Tex.App.-Houston [1st Dist.] 2007, no pet.) (op. on reh'g). Section 102.003 of the family code lists persons with general standing to file an original suit affecting the parent-child relationship ("SAPCR"). TEX. FAM.CODE ANN. § 102.003 (Vernon Supp.2007). In addition, section 102.004 specifically provides for a grandparent's standing to file an original suit if the child's present circumstances would significantly impair the child's physical health or emotional development. Id. § 102.004(a)(1). Finally, a grandparent who does not have standing to file an original suit may still be granted leave to intervene in a pending suit if the trial court determines that appointment of one or both parents as managing conservators would significantly impair the child's physical health or emotional development. Id. § 102.004(b).
1. Standing to maintain an original suit: Actual care, control, and possession of the children
We review the trial court's determination of a party's standing to file a SAPCR by construing the pleadings in favor of the petitioner and looking to the pleader's intent. See In re SSJ-J, 153 S.W.3d 132, 134 (Tex.App.-San Antonio 2004, no pet.) (citing Tex. Ass'n of Bus. v. Tex. Air Control Bd., 852 S.W.2d 440, 446 (Tex.1993)). We review the standing issue de novo. Id. Standing is implicit in the concept of subject-matter jurisdiction, id., and the trial court can consider evidence on the standing issue when evidence is necessary to determine jurisdictional facts, see Bland ISD v. Blue, 34 S.W.3d 547, 555 (Tex.2000).
In their petition in intervention, the Rivierses asserted that they had standing to intervene "as more fully detailed below [in the petition] and as set forth in Intervenors' Supporting Affidavits." The only statement in the petition relating to their standing to file an original suit under family code section 102.003 is their allegation that Ricci and Jacob had voluntarily relinquished possession and control of the children to them for at least one year, a portion of which was within ninety days preceding the date of the petition. A nonparent has standing to file an original suit affecting the parent-child relationship if he or she has had actual care, control, and possession of the child for at least six months ending not more than ninety days preceding the date of the filing of the petition. TEX. FAM.CODE ANN. § 102.003(a)(9).
The trial court heard conflicting evidence on the issue of Ricci and Jacob's alleged voluntary relinquishment of the children. In their affidavits supporting the petition in intervention, Sonja and Carlos claimed that the children had "resided with" them "off and on since their birth." They alleged that M.J.G. had lived with them since she was born with the exception of one two-week period when she stayed with her parents in another town. As for J.J.M.G., the Rivierses alleged that he "was with" them from July to December 2005; that Ricci "began leaving him" at their house every night in January 2006; *758 that Ricci, Jacob, and J.J.M.G. "moved back" with them in February 2006 while Ricci and Jacob's home was being repaired; and that although Jacob and Ricci had separated in March, the children "were with" the Rivierses until August 3, 2006. Sonja testified that when she said the children had "lived with" them, she meant "being at the house 24 hours a day, depending on me and my husband, as much as anybody would for a parent." The Rivierses also point to Ricci's testimony that she "took the kids away from the house" as showing that the children had been voluntarily relinquished and placed with them.[2]
Jacob, however, testified that at all times while the children were living in the Rivierses' home, Ricci was also living there with the childrenand he was as well, until he and Ricci separated and he moved out. Jacob stated that the children were left alone at the Rivierses' overnight only "every ones [sic] in awhile" or temporarily while Ricci was at work. Although Sonja claimed vaguely that "there were times whenever Ricci and Jake would bring its [sic] kids in, sit them down, not tell me where they were going, or when they would come back, and I had the kids," she also admitted that during the previous year, either one or both of the parents had stayed with the children in the Rivierses' house except for a five-day period from July 29 to August 3, 2006.
In their tenth point, the Rivierses challenge the trial court's finding of fact number five, arguing that the trial court erred by finding that the children were not in the Rivierses' possession for any significant period of time and were not left with the Rivierses for a six-month period of time. We may consider the trial court's findings in our de novo review of the trial court's standing determination, see Palladian Bldg. Co. v. Nortex Found. Designs, Inc., 165 S.W.3d 430, 433 n. 7 (Tex.App.-Fort Worth 2005, no pet.), but we do not review the sufficiency of the evidence supporting those findings. Instead, we take as true all evidence favorable to the Rivierses and indulge every reasonable inference and resolve any doubts in their favor. See Tex. Dep't of Parks & Wildlife v. Miranda, 133 S.W.3d 217, 228 (Tex.2004). If the evidence creates a fact question regarding the standing issue, then the trial court must allow the issue to be resolved by the fact finder. See id. However, if the relevant evidence is undisputed or fails to raise a fact question on the standing issue, then the Rivierses do not have standing to sue as a matter of law. See id. Therefore, we shall review the Rivierses' challenge to the trial court's finding, but only in the context of our review of the trial court's determination of the standing issue.
Even taking as true all evidence favorable to the Rivierses and indulging every reasonable inference and resolving any doubts in their favor, we decline to hold that the Rivierses had "actual care, custody, and control" of the children under these facts. Even though the children were living in the Rivierses' home and the Rivierses performed day-to-day caretaking duties for the children, the children's parents were also living with the children in the home, and there was no evidence that *759 Ricci and Jacob did not also care for the children or that Ricci and Jacob had abdicated their parental duties and responsibilities to the grandparents. Accordingly, we conclude that the Rivierses did not establish the six-month period of actual care, custody, and control necessary to establish their standing to file an original SAPCR petition. We hold that the Rivierses did not establish general standing to institute a SAPCR involving Ricci and Jacob's children, and we overrule the Rivierses' tenth point.
2. Grandparent standing to maintain an original suit: Significant impairment of the children's physical health or emotional development
a. The children's present circumstances
Section 102.004(a)(1) of the family code provides that a grandparent has standing to file an original suit requesting managing conservatorship if there is satisfactory proof to the court that the order requested is necessary because the child's present circumstances would significantly impair the child's physical health or emotional development. TEX. FAM.CODE ANN. § 102.004(a)(1). The children's "present circumstances" at the time that the Rivierses filed their petition in intervention were that Ricci and Jacob were the children's temporary joint managing conservators, and Ricci had the exclusive right to designate the children's primary residence; Sonja Riviers testified that the children were living at that time with Ricci and her boyfriend.
(1) Alleged family violence
In their seventh point, the Rivierses challenge the trial court's conclusion of law number five, that possession of the children by Ricci and/or Jacob did not place the children in danger of physical or emotional harm, immediate or otherwise, because there was evidence of the parents' physical altercations, both with one another and others, in the presence of the children. They point to testimony that Jacob had abused Ricci "at one point" and that she was afraid of him when the abuse first happened. However, Ricci also testified that she was not afraid of Jacob anymore and that she had never felt that he would hurt the children or hurt her in front of the children.
The Rivierses argue that the trial court abused its discretion by failing to grant their motion for new trial because Ricci failed to protect the children's interests in the original trial by not introducing evidence of Jacob's violent temper. The Rivierses argued in their motion for new trial that newly discovered evidence, a police report of an altercation between Jacob and Ricci's boyfriend, showed that the children were present.
We review the denial of a motion for new trial for an abuse of discretion. In re R.R., 209 S.W.3d 112, 114 (Tex.2006). If there is a claim of newly discovered evidence, the movants must bring forward noncumulative evidence of which they did not become aware, and could not with the exercise of diligence have become aware, until after trial. In re K.L.R., 162 S.W.3d 291, 311 (Tex.App.-Tyler 2005, no pet.). This newly discovered evidence must be so material that it would probably produce a different result. Id. In other words, the newly discovered evidence must strongly show that the original custody order would have a serious adverse effect on the interest and welfare of the children and that presentation of that evidence at another trial would probably change the result. Id.
Jacob admitted at the hearing that he was on probation for assaulting Ricci's boyfriend. Therefore, the police report is merely cumulative evidence of Jacob's *760 fight with Ricci's boyfriend. Furthermore, the police report actually reveals that Jacob reportedly hit Ricci's boyfriend in a driveway outside Jacob's sister's apartment, but the children were inside the apartment with Jacob's sister and not outside in the driveway viewing the fight. Therefore, this report is not evidence, newly discovered or otherwise, that the children were present during a physical altercation involving Jacob. We hold that the trial court did not abuse its discretion by failing to grant the Rivierses' motion for new trial. Furthermore, to the extent that the Rivierses' seventh point complains that the trial court erred by refusing to conclude that the children's physical health or emotional development was significantly impaired by the parents' physical altercations, we overrule it.
(2) Children's close relationship with grandparents
In their fourth point, the Rivierses challenge the trial court's finding of fact number sixthat they failed to show by a preponderance of credible, specific evidence that awarding custody of the children to a parent would result in serious physical or emotional harm to the childrenbecause the Rivierses claim that they proved an ongoing relationship and contact between themselves and the children. While Sonja Riviers testified that she performed many "motherly" duties for the children, such as bathing the children, putting them to sleep, and buying them diapers and clothes, there was no testimony that Ricci and Jacob did not also perform "motherly" and "fatherly" duties for the children or that the grandparent/grandchild relationship was so essential to the children's well-being that they would be physically or emotionally harmed if they did not live with the Rivierses. Accordingly, the trial court did not err by refusing to conclude that the children's physical health or emotional development was significantly impaired in their present circumstances due to their "ongoing relationship" with the Rivierses. We overrule the Rivierses' fourth point.
(3) Children's need for medical care
In their statements of their first and fifth points, the Rivierses challenge the trial court's finding of fact number onethat they had failed to show that the children's present circumstances would significantly impair the children's physical health or emotional developmentas well as conclusion of law number three, that they had failed to provide credible, specific evidence that awarding the custody of the children to a parent would result in serious physical or emotional harm to the children. The Rivierses assert that this finding and conclusion are erroneous because they presented evidence of M.J.G.'s need for reasonable and necessary medical care, and of Ricci and Jacob's failure to obtain it for her. However, their brief contains no discussion of these contentions or any citation to the record directing us to this alleged medical evidence.
Rule 38.1(h) requires a brief to contain both substantive analysis with regard to a point raised and citation to authorities and the record, and the failure to include either waives an issue on appeal. TEX.R.APP. P. 38.1(h); Huey v. Huey, 200 S.W.3d 851, 854 (Tex.App.-Dallas 2006, no pet.), cert. denied, 534 U.S. 949 (2001). We construe the rules of appellate procedure liberally, but an appellate court has no duty to search a record without sufficient guidance from an appellant to determine whether an assertion of reversible error is valid. Dallas ISD v. Finlan, 27 S.W.3d 220, 237 (Tex.App.-Dallas 2000, pet. denied). Because the Rivierses do not point us to the location in the record of any evidence presented to the court of M.J.G.'s need for medical care or of her parents' *761 failure to take her to the doctor for necessary medical treatment, and because their brief contains no substantive analysis on this issue, the Rivierses have not met their responsibility to assist the court in evaluating their contentions. We overrule their first and fifth points.
3. Grandparent standing to intervene: Significant impairment of the children's physical health or emotional development resulting from appointment of one or both parents as managing conservators
If a grandparent does not establish the right to intervene by showing standing to maintain an original SAPCR, section 102.004 of the family code provides that a trial court may grant a grandparent leave to intervene in a pending child custody suit "if there is satisfactory proof to the court that appointment of a parent as a sole managing conservator or both parents as joint managing conservators would significantly impair the child's physical health or emotional development." TEX. FAM. CODE ANN. § 102.004(b). We review a trial court's determination of a grandparent's standing to intervene in a pending child custody proceeding under an abuse of discretion standard. See id.; Whitworth, 222 S.W.3d at 621.
When an abuse of discretion standard of review applies to a trial court's ruling, findings of fact and conclusions of law aid us in reviewing the propriety of the ruling by providing us with an explanation for the ruling. Chrysler Corp. v. Blackmon, 841 S.W.2d 844, 852 (Tex.1992); Samuelson v. United Healthcare of Tex., Inc., 79 S.W.3d 706, 710 (Tex.App.-Fort Worth 2002, no pet.). But while findings of fact and conclusions of law can be helpful in applying the abuse of discretion standard, they are not required. Samuelson, 79 S.W.3d at 710. To determine whether a trial court abused its discretion, we must decide whether it acted without reference to any guiding rules or principles; in other words, whether the act was arbitrary or unreasonable. See Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex.1985), cert. denied, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986). Any factual issues decided by the court in reaching the decision under review are not reviewed by legal- and factual-sufficiency standards, although when the decision under review is based on facts determined by the court, those facts must have some support in the evidence. Crouch v. Tenneco, Inc., 853 S.W.2d 643, 649 & n. 2 (Tex.App.-Waco 1993, writ denied) (op. on reh'g).
In their second point, the Rivierses challenge the trial court's finding of fact number two, that they failed to show that the appointment of either parent as sole managing conservator or both parents as joint managing conservators at the time of the hearing would significantly impair the children's physical health or emotional development, because the Rivierses claim that they proved a close and ongoing relationship with the children. As discussed above with regard to the Rivierses' fourth point, the Rivierses did not show that the grandparent/grandchild relationship was so essential to the children's well-being that they would be physically or emotionally harmed if they did not live with the Rivierses. Accordingly, the trial court's finding of fact number two was not unsupported by the evidence before the court. We hold that the trial court did not abuse its discretion by denying the Rivierses leave to intervene in the pending child custody suit, and we overrule the Rivierses' second point.
4. Grandparent standing to intervene: Previous award of temporary custody to grandparents
*762 In their eighth point, the Rivierses challenge the trial court's denial of their petition for intervention on November 13, 2006, because the trial court had awarded them temporary custody of the children at the hearing on their request for temporary orders ten days earlier. They argue that the trial court would not have granted custody to them or ordered a social study into their home had it not believed that they had a justiciable interest in their grandchildren. However, the trial court judge made clear that it was not yet taking action on the merits of the Rivierses' intervention because he wanted to give Ricci and Jacob the opportunity to obtain legal counsel. He made no determination on the Rivierses' justiciable interest in their grandchildren; instead, he merely placed the children in their custody temporarily until a full hearing on the merits of their claim of standing, with all parties represented by counsel, could be held. It was only upon a full evidentiary hearing on the Rivierses' petition in intervention that the trial court made a determination on the Rivierses' justiciable interest in the caseand that determination was that the Rivierses did not have one. See TEX. FAM.CODE ANN. §§ 102.003, .004. We overrule the Rivierses' eighth point.
5. Grandparent standing to intervene: Standard of proof
The Rivierses complain in their twelfth point that the trial court erred by requiring them to meet a "serious harm" standard of proof because they "were seeking, alternatively to sole managing conservatorship, joint conservatorship with one or more parents and/or possession of the children under an order of visitation."[3] They cite in support language from Brook v. Brook, 881 S.W.2d 297, 299 (Tex.1994), explaining that the standard requiring proof of serious harm that would be caused by the appointment of parent or parents contemplates a situation in which neither of the parents are awarded custody. Therefore, the Rivierses' argument seems to be that because one option that they were seeking was joint managing conservatorship with Ricci and Jacob, they should not have been held to a "serious harm" standard because this arrangement is not one "in which neither of the parents are awarded custody." See id. This argument is inapposite because, as we have discussed, the standard applicable to the Rivierses' intervention is whether the evidence showed that the children's physical health or emotional development was significantly impaired. See TEX. FAM.CODE ANN. § 102.004(a)(1), (b). Regardless of whether the trial court applied a "serious harm" standard to the Rivierses' intervention, its decision to deny the intervention was nevertheless proper under the correct "significant impairment" standard. We overrule the Rivierses' twelfth point.
6. The Rivierses' standing to intervene: Summary
In appropriate circumstances, grandparent intervention in pending custody proceedings promotes the overriding policy in all suits affecting the parent-child relationship, that of protecting the best interest of the child. See Whitworth, 222 S.W.3d at 621. However, grandparents do not have free rein to challenge any and all custody matters involving their grandchildren; instead, they must show standing to maintain an original suit involving the children or meet the family code's relaxed standing requirements for intervention in *763 order to involve themselves in the custody determination. See TEX. FAM.CODE ANN. §§ 102.003, .004; Whitworth, 222 S.W.3d at 621.
The Rivierses did not establish standing to maintain an original suit because they did not show that they had had actual care, control, and possession of the children for at least six months, see TEX. FAM.CODE ANN. § 102.003(a)(9), and they did not show that the children's present circumstances significantly impaired the children's physical health or emotional development. See id. § 102.004(a)(1). They also did not show that they were entitled to intervene in the divorce/custody proceedings because they did not provide satisfactory proof to the trial court that appointment of either or both parents as managing conservators would significantly impair the children's physical health or emotional development. See id. § 102.004(b). Therefore, we hold that the trial court did not err or abuse its discretion by denying the Rivierses' petition in intervention. Accordingly, the Rivierses were properly excluded as parties to the SAPCR involving Ricci and Jacob's children.

B. The Rivierses' Lack of Standing to Challenge the Trial Court's Custody Determination
1. Quality of the trial court's findings of fact and conclusions of law
In their eleventh point, the Rivierses claim that the trial court erred by failing to enter findings of fact and conclusions of law "on which the issues in the case at bar could be predicated." Specifically, the Rivierses complain that there was no finding that the trial court's order denying their petition in intervention was in the best interests of the children and that the trial court's findings do not contain any facts on which the ultimate issue of their right to intervene can be predicated.
A trial court is required to enter findings and conclusions only on ultimate or controlling issues. In re M.M.M., 229 S.W.3d 821, 823 (Tex.App.-Fort Worth 2007, no pet.). The controlling issue in the Rivierses' petition in intervention was whether the Rivierses had standing to intervene in the custody proceedings, and the trial court's findings and conclusions directly address this issue by stating the ultimate reasons why the Rivierses did not satisfy the statutory requirements for original standing or grandparent standing to intervene. The Rivierses complain that conflicting testimony regarding family violence was given, but the trial court was not required to make findings specifically targeted to this evidence; findings that simply address how or why the trial court resolved the ultimate fact in a particular way are merely evidentiary and need not be entered. Id.
The best interest of the child shall always be the primary consideration of the court in determining the issues of conservatorship and possession of and access to the child. TEX. FAM.CODE ANN. § 153.002 (Vernon 2002). The relaxed standing rule for grandparent intervention promotes this overriding policy, that of protecting the best interest of the child. Whitworth, 222 S.W.3d at 621. But before the trial court could consider the Rivierses' claim for conservatorship of the children, the Rivierses had to establish their standing to intervene in a suit already addressing these issues. And because the Rivierses did not establish their standing to intervene, the trial court was without jurisdiction to address the Rivierses' request for conservatorship of the children or their claims that awarding custody to them would be in the children's best interests. See Rupert v. McCurdy, 141 S.W.3d 334, 341 (Tex.App.-Dallas *764 2004, no pet.) (holding that the trial court was without jurisdiction to conclude that it was in the child's best interest to grant conservatorship to a nonparent because the nonparent had failed to establish his standing to sue for custody). Therefore, the absence of a finding or conclusion on the issue of the children's best interests did not render the trial court's findings of fact and conclusions of law erroneous. We overrule the Rivierses' eleventh point.
2. Points relating to ultimate custody decision
The Rivierses' third, sixth, and ninth points pertain to various elements of their cause of action to be named the children's managing conservators instead of the children's own parents.[4] These points address the ultimate custody determination that the trial court made on the merits of the case. With our holding on the threshold issue that the Rivierses did not have standing to intervene in the custody matter, we do not address their third, sixth, and ninth points pertaining to the unreached merits of their cause of action. See, e.g., In re J.A., 225 S.W.3d 7, 11 (Tex.App.-El Paso 2005, pet. denied) (holding that without standing, a person may not complain of a judgment to which he was not a party and which imposes no obligation upon him) (citing Tex. Workers' Compensation Ins. Fund v. Mandlbauer, 988 S.W.2d 750, 751 (Tex.1999) (stating that an appellant may not complain of errors that merely affect the rights of others)); Stroud v. Stroud, 733 S.W.2d 619, 620-21 (Tex.App.-Dallas 1987, no writ) ("Persons who are strangers to a judgment have no right to seek review on appeal.").

C. Conclusion
Having overruled the Rivierses' points challenging the trial court's denial of their petition in intervention, and having declined to address the Rivierses' points on the merits of the trial court's custody determination because they did not have standing to raise them, we affirm the trial court's judgment.
NOTES
[1] Ricci apparently had retained an attorney for the divorce proceedings, but the record does not show why the attorney did not attend this hearing.
[2] Ricci testified,

The days that I took the kids away from the house was not because ofnotsaying different ways of lifestyle, but because of every time they we [sic] would walk in, it would be constant slander; stuff they were speaking to the children, stuff they were saying to me in front of the children that the children do not need to hear, and that is why I took them away from them in the first place.
[3] Presumably, they are complaining of the trial court's finding of fact number six and conclusion of law number three, which both state that the Rivierses failed to provide credible, specific evidence showing that "awarding custody of the children to a parent would result in serious physical or emotional harm to the children."
[4] The Rivierses' third point asserts that the trial court erred in finding that the Rivierses failed to overcome the presumption that a parent should be appointed managing or possessory conservator of the children; their sixth point asserts that the trial court erred in finding that possession of the children should properly be given to Ricci and Jacob; and their ninth point asserts that the trial court erred in not finding that the best interests of the children would be served by awarding care, custody, and/or control to the Rivierses.