# DISSENTING OPINION TO DENIAL OF EN BANC CONSIDERATION

No. 04-08-00507-CV

**IN THE INTEREST OF Y.B.**, K.B., and T.B., Children,
Appellant
From the 37th District Court, Bexar County, Texas
Trial Court No. 2008-CI-03913
Honorable Andy Mireles, Judge Presiding

Panel Opinion by:      Phylis J. Speedlin, Justice

Opinion Dissenting to Denial of En Banc Consideration by:  Rebecca Simmons, Justice, joined by Catherine Stone, Chief Justice

Sitting:      Catherine Stone, Chief Justice
              Karen Angelini, Justice
              Sandee Bryan Marion, Justice
              Phylis J. Speedlin, Justice
              Rebecca Simmons, Justice
              Steven C. Hilbig, Justice
              Marialyn Barnard, Justice

Delivered and Filed:  October 7, 2009

Whether David Swift presented some evidence of "actual care, control, and possession" of Tina Bruno's children under Family Code section 102.003(a)(9) is dispositive in this case. *See* TEX. FAM. CODE ANN. § 102.003(a)(9) (Vernon 2009).[1] Because I believe the majority opinion misconstrues the statute, and ignores relevant case law from the Supreme Court of the United States and our sister courts, I respectfully dissent to the denial of the motion for rehearing en banc.

I agree with the standard of review as set forth in the majority opinion, as well as the trial court's evaluation of the evidence. The trial court was required to review the evidence and pleadings, and if the evidence raised a fact question, the court could not dismiss the action based

---

[1] "[A] person, other than a foster parent, who has had actual care, control, and possession of the child for at least six months ending not more than 90 days preceding the date of the filing of the petition."

on lack of standing. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). Here, the trial court specifically found: "David Swift did not have the **actual care, control and possession** of the children, or any of the children," for the requisite six month period (emphasis added). I agree with the trial court that the activities of David Swift do not raise a fact issue in this case.

The following evidence is undisputed. Tina Bruno is the mother of the three adopted children, and the only legal parent. More than two years after Bruno obtained possession of the children, Bruno married Swift and, shortly thereafter, Swift resided with Bruno. Swift is neither the biological father of the children, nor is he the adoptive father. The children have always resided with Bruno. The parties dispute the length of time Swift resided in the home with the children, and Bruno contends that there is no evidence of actual care, control, and possession of the children. We, thus, turn to the evidence of Swift's involvement in the children's lives.

At best, the evidence shows Swift lived in Bruno's home for approximately nine months. According to Swift, he would: sometimes put cereal out for the children in the morning; eat dinner with the family; drive the children to school; help with homework; take the children fishing; bath the youngest child; and the girls called him "Daddy." The activities described are typical of those undertaken by stepparents, as well as by family and friends. The crux of the issue is whether these activities constitute some evidence of actual care, control and possession thereby giving Swift standing to seek possession of the children.

The majority's broad interpretation of section 102.003(a)(9) would give almost anyone involved with a child over the course of six months standing to file a suit affecting the parent-child relationship (SAPCR). I do not believe the legislature intended to open the standing door to those with the limited contacts described by Swift. The words "actual care, control and

possession" must mean more than driving, doing homework and putting out breakfast in accordance with a parent's wishes. Such a narrow interpretation of the statute is consistent with the constitutional rights of parents to possess and control their children. "[T]he interest of parents in the care, custody, and control of their children—is perhaps the oldest of the fundamental liberty interests recognized by [the United States Supreme] Court." *Troxel v. Granville*, 530 U.S. 57, 65 (2000). The Supreme Court has consistently recognized "the fundamental right of parents to make decisions concerning the care, custody, and control of their children." *Id.* at 66. Likewise, Texas has long recognized that "[t]he natural right which exists between parents and their children is one of constitutional dimensions." *Wiley v. Spratlan*, 543 S.W.2d 349, 352 (Tex. 1976).

When reviewing statutes, we presume that the Legislature intended the statutes to be in compliance with the constitutions of both Texas and the United States. *See* TEX. GOV'T CODE ANN. § 311.021(1) (Vernon 2005); *City of Houston v. Clark*, 197 S.W.3d 314, 320 (Tex. 2006). In addition, we must give effect to the Legislature's intent as expressed in the actual language used in the statute. *See Osterberg v. Peca*, 12 S.W.3d 31, 38 (Tex. 2000).

To establish standing, section 102.003(a)(9) requires the movant to have "actual care, control, and possession of the child" for six months. TEX. FAM. CODE ANN. § 102.003(a)(9) (Vernon 2009). "Control and possession" must mean more than simply residing in the household with the children and their parent for six months. This issue was squarely before the court in *In the Interest of M.J.G.*, 248 S.W.3d 753, 756-57 (Tex. App.—Fort Worth 2008, no pet.), where the grandparents sought custody of the children based on their actual care, control, and possession of the children under section 102.003(a)(9). The grandparents testified that, with the exception of a two-week period, the children had lived with them from birth, that they cared

for them, and they supported them financially. *Id.* at 757-58. Despite the evidence, the trial court declined to hold that the grandparents had actual care, custody, and control of the children because:

> Even though the children were living in the [grandparent's] home and the [grandparents] performed day-to-day caretaking duties for the children, the children's parents were also living *with the children* in the home, and there was no evidence that [the parents] did not also care for the children or that [the parents] had abdicated their parental duties and responsibilities to the grandparents.

*Id.* at 758–59. Thus, the court held, as a matter of law, the grandparents had no standing.

Likewise, in *In re K.K.C.*, No. 09-09-00131-CV, 2009 WL 2045331, at *5 (Tex. App.—Beaumont July 16, 2009, no pet. h.), the court held that a mother's paramour, residing with mother and child for seven years, had no standing despite substantial interaction with the child including being called "Dad." Analyzing the statute, the Court of Appeals noted that the word "'control' must mean something more than the control implicit in having care and possession of the child if the word is to be given effect and treated as more than surplusage." *Id.* at *3.

The *K.K.C.* case is significant in another manner; it demonstrates the hazard in interpreting the standing requirement too broadly. The paramour seeking joint custody of the child was not the biological father and the biological father appeared in the suit. *Id.* at *3. Additionally, although the temporary orders named the mother and paramour joint managing conservators, the orders also preserved the visitation rights of the child's father. Under this majority's interpretation of the statute, a stepparent or paramour who lived with the child and one parent more than six months would have standing to bring a SAPCR, despite the existence of another parent with possessory rights.

The statute clearly does not support such an expansive interpretation. A comparison of section 102.003(a)(9) with section 102.003(a)(11), the provision that typically applies to give

stepparents standing is illuminative. *See* TEX. FAM. CODE ANN. § 102.003(a)(9), (11) (Vernon 2009). Section 102.003(a)(11) provides standing to a person with whom the child and a parent have resided for at least six months if the "parent is deceased at the time of the filing of the petition." *See id.*; *In re SSJ-J*, 153 S.W.3d 132, 137 (Tex. App.—San Antonio 2004, no pet.). Many stepparents play an important role in their stepchildren's lives contributing to their care over the course of years, yet they generally will not have standing by virtue of their involvement unless the parent dies. Clearly section 102.003(a)(9) requires more than just residing with a child and the attendant daily interaction. It would be difficult to picture a stepparent who resides with a child over the course of years who does not on occasion help with homework, serve breakfast, and attend to various child care duties. However, under the majority's broad interpretation, section 102.003(a)(11)'s requirement that the parent be deceased would be superfluous because, as a practical matter, standing would exist under (a)(9) by virtue of the normal interaction that would occur between a stepparent and child residing together for six months. *But see Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 442 (Tex. 2009) ("[W]e do not interpret a statute in a manner that renders parts of it meaningless."); *City of LaPorte v. Barfield*, 898 S.W.2d 288, 292 (Tex. 1995) ("We will not read statutory language to be pointless if it is reasonably susceptible of another construction."). A narrower interpretation of 102.003(a)(9) is warranted to avoid an expansion of standing to persons never anticipated by the Legislature and to preserve the constitutional right of parents to control their children.

Based on a review of the entire record in this particular case, the evidence does not create a fact issue that David Swift had "actual care, control, and possession of the children." There is no evidence that Swift "made any decisions concerning [the children's] health, education, and welfare; had access to [the children's] medical and educational records; or could consult with

school officials or with medical personnel." *See In re M.K.S.-V.*, No. 05-08-00568-CV, 2009 WL 2437076, at *4 (Tex. App.—Dallas, no pet.). Likewise, there is no evidence Bruno did not also care for the children or that she abdicated her responsibilities toward her children. Accordingly, although he may have cared for the children, and participated in their daily activities, there is legally insufficient evidence that Swift maintained actual care, control, and possession as required by section 102.003(a)(9). I, therefore, respectfully dissent to the denial of the motion for rehearing en banc.

Rebecca Simmons, Justice