

# COURT OF APPEALS
**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

## NO. 02-11-00081-CV

IN RE S.B., T.B., AND L.M.                                    RELATORS

----------

## ORIGINAL PROCEEDING

----------

## MEMORANDUM OPINION[1]

----------

This original proceeding stems from a termination suit filed by prospective adoptive parents. We conditionally grant the relief requested by relators S.B. and T.B. We deny L.M.'s requested relief.

### Factual and Procedural Background

B.D. and A.D., real parties in interest and the prospective adoptive parents, filed an Original Petition to Terminate Parent-Child Relationship on September 3, 2009, seeking to terminate the parental rights of relator L.M. to her unborn child. The suit also sought to have real parties named managing conservators upon

[1]*See* Tex. R. App. P. 47.4, 52.8(d).

termination so that they could adopt the child. As grounds for termination, real parties alleged that L.M. had executed an unrevoked or irrevocable affidavit of relinquishment.[2] L.M. had signed a Statement to Confer Standing that real parties attached to the petition. *See* Tex. Fam. Code Ann. § 102.0035 (Vernon 2008).

The child, B.D., was born on September 7, 2009, and L.M. signed an affidavit of relinquishment on September 7, 2009 at 3:56 p.m.[3] But on September 21, 2009, L.M. signed a Revocation of Mother's Affidavit for Voluntary Relinquishment of Parental Rights, witnessed by two parties. L.M. mailed this revocation to both real parties and the trial court. She has consistently maintained since then that she does not want to terminate her parental rights to B.D. To that end, she has filed an original and amended motion for writ of attachment seeking B.D.'s return to her possession. During this time, B.D. has lived with real parties.

On October 15, 2009, real parties filed a Second Amended Petition to Terminate Parent-Child Relationship, alleging additional grounds for termination:

---

[2]They also sought to terminate the rights of the child's presumed father, J.M., on grounds that he executed an unrevoked or irrevocable affidavit of relinquishment or that he abandoned L.M. voluntarily with knowledge of her pregnancy. Contrary to counsel's statements on the record before the trial court, it appears that J.M. has never signed an affidavit of relinquishment.

[3]We have not been presented with any evidence showing what time the child was born. *See* Tex. Fam. Code Ann. § 161.103(a)(1) (Vernon 2008).

that both L.M. and J.M. had "voluntarily left the child alone or in the possession of another not the parent and expressed an intent not to return."

On April 20, 2010, the trial court signed temporary orders appointing real parties temporary managing conservators and L.M. temporary possessory conservator of B.D. The orders gave L.M., who lives in New Mexico, supervised access to B.D. on two Saturdays and two Sundays per month at Tarrant County Family Court Services. On July 7, 2010, L.M. filed an affidavit with the trial court indicating that she wished for her parents, S.B. and T.B. (intervenors), who also live in New Mexico, to have temporary possession of B.D. so that L.M. could bond and have regular contact with her. L.M. said she would agree to supervised contact if required by the trial court; however, she further indicated her desire that this contact take place with intervenors in New Mexico.

On July 14, 2010, intervenors filed a Petition in Intervention in Suit for Termination or Alternatively for Managing Conservatorship in real parties' termination suit. They pled that it was in B.D.'s best interest that they be named her managing conservators and that appointment of L.M. and J.M. as joint managing conservators would not be in B.D.'s best interest because it "would significantly impair the child's physical health or emotional development." They also requested (1) dismissal of real parties' suit, (2) alternatively, that the trial court appoint them and L.M. as temporary joint managing conservators, with intervenors as the conservators with exclusive right to designate B.D.'s primary residence, or (3) also alternatively, that the trial court "set[] an access and

3

possession schedule between" them and B.D. They further requested that real parties be permanently enjoined from keeping B.D. in their possession. Attached to the petition are consents by both biological parents, L.M. and J.M., to the intervention under section 102.004(a)(2). Real parties answered the petition in intervention, alleging that the intervenors do not have standing to intervene in the pending suit.

L.M. filed a motion to dismiss the real parties' termination suit in October 2010, alleging that real parties do not have standing.

On October 13, 2010, the associate trial judge struck the petition in intervention, stating that "[i]ntervenors cannot rely on § 102.004(a)(2) for standing since . . . that statute clearly allows an *original* suit to be filed upon the parents['] consent, not an *intervention* in an existing suit." On October 26, 2010, the associate judge denied L.M.'s motion to dismiss.

Both L.M. and the intervenors requested a de novo hearing before the trial judge. The trial judge affirmed the associate judge's rulings.[4]

---

[4]Relators originally provided this court with only a letter ruling by the trial judge. Real parties contended in their response that the trial judge's letter ruling is not reviewable by mandamus because it is not reduced to a written order. In their reply brief, relators provided this court with an order signed by the trial judge. *See* Tex. R. App. P. 52.7(b). However, even if they had not done so, the trial court's letter clearly shows a present intent to rule, stating, "Their intervention is dismissed." *See, e.g., Reese v. Piperi*, 534 S.W.2d 329, 330 (Tex. 1976) ("The rendition of judgment is a present act, either by spoken word or signed memorandum, which decides the issues upon which the ruling is made."); *In re Perritt*, 973 S.W.2d 776, 779 (Tex. App.—Texarkana 1998, orig. proceeding) (holding that even an oral ruling may be complained of on mandamus as long as it is clearly shown in the record); *cf. Wittau v. Storie*, 145 S.W.3d 732, 735 (Tex.

4

L.M. and the intervenors jointly filed this mandamus. L.M. asks this court to vacate the trial court's order refusing to dismiss real parties' petition. We deny L.M.'s requested relief. *See* Tex. R. App. P. 52.8(a), (d).

The intervenors ask that we vacate the trial court's order striking their petition in intervention. For the reasons set forth below, we grant their requested relief.

### Analysis of Intervenors' Issue

Section 102.004(a) of the family code provides that a grandparent who does not otherwise have standing under section 102.003 may file an original suit requesting managing conservatorship of a child upon providing satisfactory proof to the court that (1) "the child's present circumstances would significantly impair the child's physical health or emotional development" or (2) "both parents, the surviving parent, or the managing conservator or custodian either filed the petition or consented to the suit." Tex. Fam. Code Ann. § 102.004(a)(1)–(2) (Vernon 2008). Section 102.004(b) provides that a grandparent may not file an original suit seeking possessory conservatorship of a child but may intervene in a suit in which another party is seeking possessory conservatorship upon a

App.—Fort Worth 2004, no pet.) (holding that a trial court's judgment is rendered when court officially announces its decision in open court or signs a judgment). Although a trial court's ruling must generally be final for appeal purposes, it need not be so for mandamus purposes. *See* Tex. R. App. P. 26.1 (setting forth deadlines for filing of notice of appeal from date judgment is signed); *Holloway v. Fifth Court of Appeals*, 767 S.W.2d 680, 684 (Tex. 1989) (holding that mandamus does not generally lie from same order while appeal pending because remedy is adequate by appeal).

showing that "appointment of a parent as a sole managing conservator or both parents as joint managing conservators would significantly impair the child's physical health or emotional development." *Id*. § 102.004(b). Real parties contend that intervenors cannot intervene in their suit seeking termination and managing conservatorship because a petition in intervention seeking managing conservatorship is not an "original suit."

Generally, an intervenor must show standing to maintain an original suit in order to intervene. *In re M.J.G*., 248 S.W.3d 753, 757 (Tex. App.—Fort Worth 2008, no pet.); *Whitworth v. Whitworth*, 222 S.W.3d 616, 621 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (op. on reh'g). Section 102.004(b) provides a relaxed standard for grandparents (and other persons with substantial past contact with a child) who do not otherwise have standing to file an original suit to intervene in a pending suit filed by a person with such standing. *See, e.g., In re K.N.M.*, No. 02-08-00308-CV, 2009 WL 2196125, at *4 (Tex. App.—Fort Worth July 23, 2009, no pet.) (mem. op.); *In re N.L.G*., 238 S.W.3d 828, 829–31 (Tex. App.—Fort Worth 2007, no pet.) (describing subsection (b) as providing additional, "relaxed" way for foster parents to participate in termination suit). A grandparent who does not have standing to file an original suit under section 102.004(a) may nevertheless still be granted leave to intervene in a pending suit under subsection (b) if the trial court determines that appointment of one or both parents as managing conservators would significantly impair the child's physical health or emotional development. *M.J.G.,* 248 S.W.3d at 757, 761. Subsection

6

(b) was added to provide those persons who did not otherwise have standing to file an original suit permission to intervene in a pending suit brought by a person with standing. *See, e.g., N.L.G.*, 238 S.W.3d at 829–31; *Villareal v. Villareal*, No. 14-04-00071-CV, 2005 WL 3116218, at *1 (Tex. App.—Houston [14th Dist.] Nov. 23, 2005) (mem. op.). In other words, the existence of subsection (b), allowing a grandparent to intervene in a pending suit if he or she can make the required showing that the appointment of one or both parents as managing conservator would significantly impair the emotional development or physical health of the child, does not prohibit a grandparent who has standing under subsection (a) from intervening in an existing suit under that subsection. *See M.J.G.*, 248 S.W.3d at 761 ("*If a grandparent does not establish the right to intervene by showing standing to maintain an original SAPCR*, section 102.004 of the family code provides that a trial court may grant a grandparent leave to intervene in a pending child custody suit 'if there is satisfactory proof to the court that appointment of a parent as a sole managing conservator or both parents as joint managing conservators would significantly impair the child's physical health or emotional development.'" (emphasis added)). The legislature could not have intended that the burden to intervene in an existing suit be higher than the burden to initiate an original suit under section 102.004(a). *See City of Rockwall v. Hughes*, 246 S.W.3d 621, 625–26 (Tex. 2008).[5]

---

[5]Real parties contend that subsection (b) should control over subsection (a) because it is more specific; however, that rule does not apply here because

Here, intervenors have established that they have the right to bring an original suit requesting managing conservatorship because they have obtained the consent of both parents. *See* Tex. Fam. Code Ann. § 102.004(a)(2). Thus, they also have the right to intervene in real parties' original, pending suit to terminate L.M.'s parental rights and seek managing conservatorship of B.D., and the trial court abused its discretion by striking their petition in intervention.[6] *See In re C.G.C.*, No. 12-08-00253-CV, 2010 WL 338062, at *4–5 (Tex. App.—Tyler Jan. 29, 2010, no pet.) (mem. op.); *In re Cervantes*, 300 S.W.3d 865, 875–77 (Tex. App.—Waco 2009, orig. proceeding) (op. on reh'g).

---

(a) and (b) are not irreconcilable and because, as this court and other intermediate appellate courts have held, (b) is a fall-back provision under which a grandparent can participate in a suit if he or she cannot maintain an original suit under (a) or another provision of the family code. Real parties contend that (b) was added so that an unfit parent cannot "consent to grandparents to fight a custody battle by proxy when there is a fit parent capable of being the child's managing conservator." But standing under 102.004(a)(2) is not premised on fitness; under the plain language of the subsection, fit or unfit parents, or a fit or unfit sole surviving parent, managing conservator, or custodian, can consent to a grandparent filing an original suit requesting managing conservatorship. *See* Tex. Fam. Code Ann. § 102.004(a)(2). The constitutional safeguard against state interference in the parent-child relationship as set forth in *Troxel v. Granville* is not violated if parents themselves (whether fit or unfit) willingly choose to allow a grandparent to file a suit (in intervention or otherwise) seeking managing conservatorship of a child. 530 U.S. 57, 67, 120 S. Ct. 2054, 2061 (2000).

[6]Real parties alleged that T.B. is L.M.'s stepfather and not her biological father. S.B. and T.B. have consistently pleaded that they are the "maternal grandparents." Because the trial court did not hear evidence on this matter and did not resolve this fact issue in deciding to dismiss the petition in intervention, we cannot uphold the trial court's decision as to T.B. on this basis. The parties are free to develop the facts as to this issue in the trial court. *See In re Chassidie Russell*, 321 S.W.3d 846, 858 (Tex. App.—Fort Worth 2010, orig. proceeding).

Furthermore, relators do not have an adequate remedy by appeal.  If the trial court decides to terminate L.M.'s and J.M.'s parental rights, intervenors will no longer be able to maintain a suit for managing conservatorship of B.D. *See* Tex. Fam. Code Ann. § 102.006 (Vernon 2008).

**Conclusion**

Accordingly, we conclude that relators S.B. and T.B. are entitled to mandamus relief.  We order the trial court to vacate its ruling dismissing their petition in intervention.  Writ will issue only if the trial court promptly fails to do so.[7]


TERRIE LIVINGSTON
CHIEF JUSTICE

PANEL:  LIVINGSTON, C.J.; MCCOY and GABRIEL, JJ.

GABRIEL, J. dissents without opinion.

DELIVERED: March 11, 2011

---

[7]In the interest of promoting the prompt resolution of this case, we deny the motion for temporary relief.  If intervenors do not have adequate time to prepare for trial, which they have not alleged in this court, they may seek a motion for continuance in the trial court.