

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-14-00042-CV

_____

IN THE INTEREST OF B.S.N., A CHILD

On Appeal from the 202nd District Court
Bowie County, Texas
Trial Court No. 13C0437-202

Before Morriss, C.J., Moseley and Carter,* JJ.
Memorandum Opinion by Justice Moseley

_____

*Jack Carter, Justice, Retired, Sitting by Assignment

## MEMORANDUM OPINION

This is an appeal from the appointment of joint managing conservators of B.S.N., a minor child. We affirm the judgment of the trial court.

## I. FACTS

On April 8, 2012, when B.S.N. was a little more than five weeks old, his Mother[1] called her Cousin to report that both she and the child's father were then using methamphetamine on a regular basis and could not properly care for B.S.N. At that time, Mother sought to turn possession of B.S.N. over to Cousin (who resided with her own parents, Aunt and Uncle). After arriving at the home, Cousin testified that Father threatened to commit suicide if she took B.S.N. Unable to calm Father down, Cousin called the police. Upon their arrival, the police arrested Father on an unrelated outstanding warrant and removed him from the scene. The disturbing influence of Father having been removed, Cousin took possession of B.S.N., at the urging of Mother, and left. At the suggestion of the police, Cousin later called the Department of Family and Protective Services, which opened a "family-based safety services case" prescribing suggested visitation periods and circumstances for the parents, as well as providing parenting classes, counseling sessions, drug testing, and other services to Mother and Father to help them reunite with B.S.N. Although the child was returned to Mother and Father after about six months at the suggestion of the Department, Mother subsequently voluntarily returned the child to the custody of Aunt and Uncle.

---

[1]For the sake of anonymity of the child, we shall not use the names of the parties. Rather, we use "Mother" and "Father" in lieu of the names of the child's parents. We use "Cousin" when speaking of the cousin of Mother and "Aunt" and "Uncle" when making reference to the aunt and uncle of Mother. *See* TEX. R. APP. P. 9.8.

Almost an entire year (March 25, 2013) after the initial time that Cousin had been called to come get B.S.N., Aunt and Uncle filed a suit affecting the parent-child relationship wherein they sought to be named B.S.N.'s joint managing conservators with the exclusive right to designate the child's primary residence. That petition alleged that B.S.N. had resided with them since he was six weeks old. A hearing was held and temporary orders were issued, keeping the status quo. After ordered home evaluations were completed, a final hearing was held, and the trial court appointed Aunt, Uncle, Mother, and Father as joint managing conservators of B.S.N., with Aunt and Uncle having the exclusive right to designate B.S.N.'s domicile. After having filed a motion for new trial (which was overruled by operation of law), Mother and Father filed this appeal.

On appeal, Mother and Father contend that the trial court erred in the following respects: (1) that Aunt and Uncle neither pled nor proved standing pursuant to Section 102.003(a)(12) of the Texas Family Code and (2) that Aunt and Uncle failed to prove they had standing under Section 102.003(a)(9) of the Texas Family Code.

We affirm the trial court's order because (1) the standing of Aunt and Uncle was not based upon Section 102.003(a)(12) of the Family Code and (2) Aunt and Uncle proved standing under Section 102.003(a)(9).

## II. STANDING

In an original suit affecting the parent-child relationship in which the petitioner seeks to adopt a child or to be appointed the child's managing conservator, the question of standing is a threshold issue. *See* TEX. FAM. CODE ANN. § 102.006 (West 2014) (outlining individuals who

may not file original suit in cases wherein parent-child relationship between child and every living parent of child has been terminated); *see also In re M.P.B.*, 257 S.W.3d 804, 808 (Tex. App.—Dallas 2008, no pet.). "[A] party seeking relief in such suits must plead and establish standing within the parameters of the language used in the Code." *In re M.T.C.*, 299 S.W.3d 474, 480 (Tex. App.—Texarkana 2009, no pet.) (citing *In re H.G.*, 267 S.W.3d 120, 124 (Tex. App.—San Antonio 2008, pet. denied)); *see also* TEX. FAM. CODE ANN. §§ 102.003–.007 (West 2014). If a party fails to establish standing, the trial court must dismiss the suit. *See In re C.M.C.*, 192 S.W.3d 866, 870 (Tex. App.—Texarkana 2006, no pet.).

"Standing, which is a component of subject matter jurisdiction, is a constitutional prerequisite to maintaining a suit under Texas law." *In re E.C.*, No. 02-13-00413-CV, 2014 Tex. App. LEXIS 10199, at *3 (Tex. App.—Fort Worth Sept. 11, 2014, no pet.) (mem. op. on reh'g); *see Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993); *In re M.J.G.*, 248 S.W.3d 753, 762 (Tex. App.—Fort Worth 2008, no pet.). "A party's lack of standing deprives the trial court of subject matter jurisdiction and renders any trial court action void." *In re Russell*, 321 S.W.3d 846, 856 (Tex. App.—Fort Worth 2010, orig. proceeding) (citing *Taub v. Aquila Sw. Pipeline Corp.*, 93 S.W.3d 451, 455 (Tex. App.—Houston [14th Dist.] 2002, no pet.) (denying mandamus)). "Standing cannot be conferred by consent or waiver and can be raised for the first time on appeal." *E.C.*, 2014 Tex. App. LEXIS 10199, at *3; *see Tex. Ass'n of Bus.* 852 S.W.2d at 443.

"Whether a person has standing is a question of law that we review de novo." *E.C.*, 2014 Tex. App. LEXIS 10199, at *3; *see M.J.G.*, 248 S.W.3d at 758; *In re Vogel*, 261 S.W.3d 917,

4

920–21 (Tex. App.—Houston [14th Dist.] 2008, orig. proceeding). In addition, "we review the trial court's interpretation of applicable statutes de novo." *Russell*, 321 S.W.3d at 856; *see Johnson v. City of Fort Worth*, 774 S.W.2d 653, 654–55 (Tex. 1989) (per curiam). In the present case, we look to Section 102.003(a) of the Texas Family Code to determine standing. *Tex. Dep't of Protective & Regulatory Servs. v. Sherry*, 46 S.W.3d 857, 861 (Tex. 2001).

**A. Did Aunt and Uncle Plead and Prove Standing Under Section 102.003(a)(12)?**

The petition filed by Aunt and Uncle alleges them to "have standing to bring this suit in that the child has resided with them since he was six weeks old." In their first point of error, Mother and Father allege that Aunt and Uncle failed to plead and prove standing "pursuant to the language of Texas Family Code section 102.003(a)(12)" because they failed to plead and prove that they were foster parents and that they had the child for twelve months prior to filing suit.

Section 102.003(a)(12) grants standing to "a person who is the foster parent of a child placed by the Department of Family and Protective Services in the person's home for at least 12 months ending not more than 90 days preceding the date of the filing of the petition . . . ." TEX. FAM. CODE ANN. § 102.003(a)(12).

Here, Aunt and Uncle make no claim to standing under Section 102.003(a)(12) and made no attempt to prove standing thereunder. Rather, they claim standing under the provisions of Section 102.003(a)(9) of the Texas Family Code. Therefore, this issue is inapplicable, and we overrule this point of error.

5

**B.      Did Aunt and Uncle Prove Standing Under Section 102.003(a)(9)?**

In their second point of error, Mother and Father contend that Aunt and Uncle failed to prove standing under Section 102.003(a)(9).

Section 102.003(a)(9) of the Texas Family Code grants standing to "a person, other than a foster parent,[2] who has had actual care, control, and possession of the child for at least six months ending not more than 90 days preceding the date of the filing of the petition . . . ." TEX. FAM. CODE ANN. § 102.003(a)(9).

Citing the language of the statute, Mother and Father argue that Aunt and Uncle bore the burden of proving that they were not foster parents (because if they were foster parents, the standing requirements are different) and that they failed to offer such proof.[3]  However, Mother and Father fail to cite any authority in support of their argument, and we are aware of none. Whether they were foster parents was not an issue raised in the pleadings or during either the hearing on temporary orders or the final hearing.  Here, there is no indication in the evidence that Aunt and Uncle were foster parents at the time they filed their petition for custody.  Instead, there is ample evidence in the record that Aunt and Uncle were not foster parents.  On the "Request for Kinship Home Assessment or Services" forms admitted at trial (on forms filled out by those who conducted the home studies of the homes of the Mother and Father and of the Aunt and Uncle), there is a question asking whether "the family [is] interested in becoming verified for foster care or pursuing permanency care assistance."  There were conflicting answers—one of

_____

[2]The Family Code does not define the term "foster parent."

[3]As Mother and Father do not challenge the application of the other provisions of Section 102.003(a)(9), we do not address them.

6

the interviewers marked "no," and the other marked "yes." The home study remarks that Aunt and Uncle "do not want to see [B.S.N.] end up in foster care." While, Lamish Boyce, a Department family-based services worker, testified that when she initially visited Mother and Father, "the child was already placed in the home with" Aunt and Uncle, it is undisputed that the child was not placed in the home through an action by the Department. Rather, Mother voluntarily placed B.S.N. with Cousin, who lived with Aunt and Uncle, this being tantamount to placing B.S.N. with Aunt and Uncle.

Based on the foregoing, we find Aunt and Uncle proved standing pursuant to Section 102.003(a)(9) of the Texas Family Code. We overrule this point of error.

We affirm the judgment of the trial court.


Bailey C. Moseley
Justice

Date Submitted:     December 9, 2014
Date Decided:       January 6, 2015

7